UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

08 APR 14 AM 11:28

UNITED STATES OF AMERICA,           )   Magistrate Case No.      '08 MJ 1143
                                    )
        Plaintiff,                  )
                                    )   COMPLAINT FOR VIOLATION OF:
        v.                          )
                                    )   Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii)
Marisol BALLESTEROS-Casillas,       )   Transportation of Illegal
Aka Marisol GONZALEZ-Ballesteros    )   Aliens
                                    )
        Defendant(s)                )
                                    )

The undersigned complainant, being duly sworn, states:

On or about **April 11, 2008**, within the Southern District of California, defendant **Marisol BALLESTEROS-Casillas** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Jose Luis LUNA-Rebollar**, and **Julia MEDINA-Ramirez** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **14th** DAY OF **APRIL 2008.**

Barbara L. Major
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Marisol BALLESTEROS-Casillas
Aka Marisol GONZALEZ-Ballesteros

### PROBABLE CAUSE STATEMENT

I declare under the penalty of perjury that the following statement is true and correct:

Furthermore, the complainant states that **Jose Luis LUNA-Rebollar**, and **Julia MEDINA-Ramirez** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On April 11, 2008, at approximately 1:30 A.M., Agent Baez, who was positioned at the Barrett Cafe on SR-94, approximately four miles west of SR-188, observed a black Nissan Murano, followed closely by a red Jaguar X-Type, traveling east on SR-94. Agents Rodriguez and Engelhorn, who were positioned in separate locations near the intersection of SR-94 and SR-188, observed the two vehicles travel west on SR-94 and turn south onto SR-188. Approximately ten minutes after Agent Baez' initial observation, Agent Hansen observed the Murano pull into a parking lot east of the sub-station. The Jaguar, which had followed the Murano, pulled into the closed gas station just north of this parking lot. This drew the agent's attention because the gas station, and other businesses located next to it were all closed this time of the evening.

Agent Engelhorn soon observed the Murano driving east onto SR-94. Shortly after the Murano passed, Agent Engelhorn observed the Jaguar turn east onto SR-94. After several minutes of driving on SR-94, the Murano approached Forest Gate Road and turned south, continuing at a high rate of speed. Forest Gate Road is a residential road with reduced speed limits that eventually intersects Sheridan Road which eventually intersects with SR-94 several miles east of Forest Gate Road. Agent Hansen continued east on SR-94 at posted speed limits. As Agent Hansen approached the intersection with Sheridan Road, he observed the Murano turn east onto SR-94 behind him. Being familiar with the area, Agent Hansen knew that in order for the Murano to arrive at this intersection before him, it would have to travel at speeds well in excess of the posted speed limit. Agents Engelhorn and Baez continued following the Jaguar as it turned north onto Buckman Springs Road eventually turning east onto Interstate 8. Approximately one mile west of the Kitchen Creek Road exit, the Jaguar pulled to the shoulder of the freeway and came to a stop. Agents Baez and Engelhorn stopped behind the Jaguar, approached the driver, identified themselves as Border Patrol Agents and conducted an immigration interview. The driver presented a California State identification card, and a Permanent Resident card identifying her as Cleofas Raquel Villareal De ORTEGA.

Agent Engelhorn contacted San Diego Sector Dispatch and requested record checks on ORTEGA, referencing the presented identity documents and on the Jaguar, referencing its displayed California license plate. Dispatch soon relayed that ORTEGA had prior arrests for alien smuggling and narcotics. DMV checks on the Jaguar listed a release of liability to an individual in Las Vegas, Nevada. When asked what she was doing, ORTEGA told agents that she dropped off her daughter at the Tecate, California Port of Entry and was driving to the Golden Acorn Casino to pick up her father who was there with her sister. As Agents Engelhorn and Baez spoke with ORTEGA, Agents Rodriguez and Hansen continued to follow the Murano. The Murano proceeded eastbound on SR-94 and then merged onto Eastbound Old Highway 80 in Boulevard, California. The Murano continued past the quickest access to Interstate 8 and continued on the back-road towards Jacumba. Record checks on the Murano through Border Patrol Dispatch indicated that the vehicle had not crossed the United States/Mexico border within the last 30 days and that it not been reported stolen. The Murano was bearing Mexican vehicle plates.

Border Patrol Agent Bouchard, of the Boulevard Station responded to assist in performing a vehicle stop on the Murano. Agent Bouchard activated his emergency lights and the Murano yielded without incident.

**CONTINUATION OF COMPLAINT:**
Marisol BALLESTEROS-Casillas
Aka Marisol GONZALEZ-Ballesteros

Agents Hansen and Rodriguez approached, identified themselves and Border Patrol Agents and asked the driver, identified as the defendant, **Marisol GONZALEZ-Ballesteros** for identification. She presented a California driver license, and Permanent Resident Alien Card. There was a Motorola Boost Mobile i425 cellular telephone lying on the front passenger seat of the Murano. Agent Rodriguez asked **GONZALEZ** if she had any passengers in her vehicle. **GONZALEZ** responded, "They're in the back, there's two of them."

Agents looked in through the tinted windows, but could see no one. Agent Rodriguez requested **GONZALEZ'** consent to search the Murano. She granted her consent. Agents Rodriguez and Hansen inspected the rear seating and cargo areas of the Murano and observed indicators of a non-factory compartment. These indicators were a raised rear cargo deck and adhesive overspray on the rear outboard corners of the cargo area.

A closer inspection of the rear cargo area revealed that the raised cargo deck was made of plywood, hinged in the rear to accept cargo. The spare tire had been removed from the cargo area. The plywood had been supported by braces of an unknown material, covered with spray-applied foam. The top or readily visible portions of the compartment were carpeted to match the Murano's interior. Upon looking inside this compartment, Agents observed one adult male Hispanic and one adult female Hispanic crammed within. The rear seats of the Murano had to be folded down to access this compartment and remove the concealed individuals. With the rear seats in an up-right position, which they were at the time, the compartment could not have been opened from within allowing egress from this confined space.

Agents asked the two concealed individuals to exit the compartment. Both complied. These individuals were later identified as Jose Luis LUNA-Rebollar and Julia MEDINA-Ramirez. Agent Rodriguez conducted an immigration field interview on both subjects, who both readily admitted to being citizens and nationals of Mexico, illegally present in the United States. Agent Rodriguez placed both under arrest for illegal entry. Agent Rodriguez placed **GONZALEZ** under arrest for suspicion of alien smuggling.

**DEFENDANT STATEMENT:**

At approximately 8:06 A.M., Agent Rodriguez read **GONZALEZ** her Miranda/Consular rights in the Spanish language as witnessed by Agent Engelhorn. **GONZALEZ** stated that she understood her Miranda/Consular rights and stated that she was willing to answer their questions without an attorney present. On April 12, 2008, at approximately 1:32 a.m., prior to conducting a follow-up interview on **GONZALEZ**, Agent Miranda reminded **GONZALEZ** that her Miranda rights still applied. Furthermore, Agent Miranda presented GONZALEZ with the Miranda Waver Form that she had signed and asked her if she wanted them to be read to her again. **GONZALEZ** replied, "No" and agreed to answer Agent Miranda's questions without an attorney present. **GONZALEZ** said that she was a citizen and national of Mexico. **GONZALEZ** said that she has had a permanent residence alien status in the United States since 1989.

On a prior occasion, ORTEGA told GONZALEZ that she is involved in alien smuggling. **GONZALEZ** has heard ORTEGA talk to a subject named Don Rey on numerous occasions concerning alien smuggling arrangements. According to GONZALEZ she hears these conversations through ORTEGA's Nextel cellular speaker phone. GONZALEZ also knows of a foot-guide working for ORTEGA named Javier that calls her when smuggled aliens are ready to be picked up. GONZALEZ knows of at least one driver who picks up illegal aliens for ORTEGA.

On April 11, 2008, GONZALEZ heard a conversation between ORTEGA and Javier through ORTEGA'S speaker phone. GONZALEZ overheard heard Javier tell ORTEGA, "The people are here and it is clean." ORTEGA told Javier that she did not have her driver available. Following this conversation, ORTEGA

**CONTINUATION OF COMPLAINT:**
Marisol BALLESTEROS-Casillas
Aka Marisol GONZALEZ-Ballesteros

asked GONZALEZ to pick up the two illegal aliens in a parking lot in Tecate. After agreeing, GONZALEZ heard ORTEGA tell Javier that a black Murano bearing a Mexican plate from Distrito Federal would be used to pick up the aliens.

When GONZALEZ arrived at the parking lot in Tecate, she claimed to be very nervous and that she did not want to proceed with the arrangements. She spoke to GONZALEZ via Nextel that was provided by ORTEGA and told her that she did want to proceed with the smuggling. ORTEGA then told GONZALEZ to tap on her brakes to signal the illegal aliens to come up to her. After tapping her brakes, GONZALEZ noticed the two subjects get in her vehicle. GONZALEZ attempted to place both subjects inside a compartment in the rear of the Murano but was unable to because the smuggled female was too big. Worried about the situation, GONZALEZ told ORTEGA that she didn't want the aliens in her car because they didn't fit. Once again, ORTEGA asked her to carry on and to take the aliens to the Casino on Interstate 8. Both aliens got inside the compartment but the lid covering it was not properly shut thus making the aliens somewhat visible. GONZALEZ left the parking lot and began driving towards the casino. GONZALEZ got lost by making a wrong turn but eventually figured out where to go. As GONZALEZ continued to drive, she was pulled over by the Border Patrol and then arrested after the two smuggled aliens were found.

GONZALEZ was presented with a photo lineup consisting of six different photos. GONZALEZ identified photo number five as ORTEGA. GONZALEZ said she expected to be paid by ORTEA for transporting the illegal aliens, but that payment was not discussed.

**MATERIAL WITNESSES STATEMENTS:**

Material witnesses Jose Luis LUNA-Rebollar and Julia MEDINA-Ramirez freely stated that they are citizens and nationals of Mexico illegally present in the United States without the proper documentation. Both stated they were to pay between $2,300.00 and $2,500.00 to be smuggled into the United States. Both individuals stated they were led by a foot guide to an undisclosed location where he abandoned them. In the event the foot guide did not come back they were instructed to follow the route given by the foot guide until arriving at the loading spot. Once arriving at the load spot a vehicle would pull up and tell both individuals to get in the vehicle. Both individuals stated when they got in the vehicle the driver sounded like a female and told them to get into a compartment and hide. They remained in the compartment for approximately one and a half hours. LUNA stated that the foot guide prior to abandoning them gave him a cell phone. The load driver contacted LUNA via cell phone and said she was on her way and when arriving at the load spot she would flash her brake lights several times indicating the load vehicle. LUNA further stated a vehicle arrived in their location where they were hiding and did stop and flash the brake lights and instruct them to get in and hide in the compartment. When presented with two photographic lineups, each containing six different photographs, neither individual was able to identify the defendant as the driver of the vehicle.

CONTINUATION OF COMPLAINT:
Marisol BALLESTEROS-Casillas
Aka Marisol GONZALEZ-Ballesteros

Executed on April 12, 2008, at 10:00 AM

Irene S. Aguirre
Senior Patrol Agent

On the basis of the facts presented in the probable cause statement consisting of 4 page(s), I find probable cause to believe that the defendant named in this probable cause statement committed the offense on April 11, 2008, in violation of Title 8, United States Code, Section 1324.

Barbara L. Major
United States Magistrate Judge

4/12/08 at 12:15 PM
Date/Time